John W. Fuller et al v. Richard E. Hasbrouck et al.

*Assignments for benefit of creditors—Omission of assignee to file bond—Act 198 of 1879—Attachments.*

Where an assignee for the benefit of creditors has assumed the trust, his omission to file a bond within ten days for its faithful execution, as required by Act 198 of 1879, does not render the assignment absolutely void, but only voidable, and creditors may proceed by bill in equity for the enforcement of the trust.

Rights acquired by attachment are inchoate until judgment and levy of execution.

Appeal from St. Joseph. Submitted April 12–13. Decided April 27.

Bill to set aside chattel mortgages and for appointment of receiver. Complainants appeal. Reversed.

*D. C. Page, H. H. Riley* and *Chas. Upson* for complainants.

*Geo. L. Yaple, Germain H. Mason* and *H. C. Briggs* for defendants.

Cooley, J. The question in this case is one of construction of the "Act to provide for the regulation and enforcement of assignments for the benefit of creditors," approved May 13, 1879. Public Acts 1879, p. 181.

The first section of the act provides "that all assignments commonly called common-law assignments for the benefit of creditors shall be void unless the same shall be without preferences as between such creditors, and shall be of all the property of the assignor, not exempt from execution, and unless such instrument of assignment, or a duplicate thereof, an inventory of the assigned property, a list of the creditors of the assignor, and a bond for the faithful performance of the trust by the assignee, shall be filed in the office of the clerk of the circuit court of the county where such assignor

resides, or, if he is not a resident of this State, then of the county where the assignee resides; if neither are residents of this State, then of the county where the assigned property is principally located, within ten days after the making thereof. Such assignment shall convey to the assignee all property of the assignor not exempt from execution, and all rights, legal or equitable, of said assignor: *provided*, that no such assignment shall be effectual to convey the title to the property of the assignor to the assignee until such bond shall be executed, filed with, and approved by said clerk: *and provided further*, that no attachment or execution levied upon any assigned property of such assignor, after such assignment, and before the expiration of the time provided herein for filing such bond, shall be valid or create any lien upon such property."

The second section gives specific direction respecting the inventory, list of creditors and bond; the third declares that " every such assignment shall confer upon such assignee the right to recover all property, or right or equities in property, which might be reached or recovered by any of the creditors of such assignor;" the fourth provides for notices to creditors, and the fifth for the filing by the assignee of periodical reports. The sixth and last section is as follows:

" In case there shall be any fraud in the matter of said assignment, or in the execution of said trust, or if the assignee shall fail to comply with any of the provisions of this act, or fail or neglect to promptly and faithfully execute said trust, any person interested therein may file his bill in the circuit court in chancery of the proper county for the enforcement of said trust; and the court, in its discretion, may appoint a receiver therein, and the court shall have power to order the summary examination before himself, or a circuit court commissioner, of any party or witness, at any stage of said cause relative to the matters of said trust, and enforce attendance and the giving of testimony therein, in the same manner as in the trial of causes in such circuit courts in chancery."

, The defendants Richard E. Hasbrouck and James Hill, composing the mercantile firm of Hasbrouck & Hill doing business at Mendon in St. Joseph county, on the tenth day of January, 1881, made a general assignment for the benefit of their creditors to Orlando J. Fast. The assignment purported to give no preferences. Appended to it was a list of

unsecured creditors, and also a list of debts amounting to $5841.38, which were represented to be secured by chattel mortgages. Fast accepted the trust, took possession of and invoiced the property, and gave due notice to the creditors. He failed, however, to give the bond required by the statute. Immediately on the expiration of the ten days several of the creditors sued out attachments which they caused to be levied upon the property, and the secured creditors also took possession under their several mortgages. Thereupon the complainants in this suit, who are unsecured creditors, filed their bill in equity, setting forth all the facts, questioning the good faith of the chattel·mortgages, and suggesting that they were made to give fraudulent preferences, and praying that a receiver be appointed by the court and the trust under the assignment executed by him. The assignors and the attaching and mortgage creditors were made parties defendant, and the bill prayed that they be enjoined from proceeding further in the enforcement of their respective pretended liens.

The defendants demurred to this bill, and the demurrer was sustained and the bill dismissed. This seems to have been done on the supposition that the failure of the assignee to give a bond within the ten days rendered the assignment wholly nugatory and void for all purposes; and that there was consequently no trust created, and nothing to preclude the creditors making levies.

It is very evident that this view of the statute renders the sixth section in part at least of no avail. That section expressly provides that in case the assignee shall fail to comply with any provision of the act, the court may proceed in the enforcement of the trust through a receiver. The neglect to file a bond was unquestionably such a failure; so that the case is within the very letter of the statute, and apparently within the intent also. If we look no further than the sixth section the case would seem to be clear: the contingency happened which entitled the court to intervene with its receiver, and the complainants on a showing of the facts called for its intervention.

But the view of the defendants would also defeat the general intent of the statute, and render it worthless if not positively mischievous. The general intent of the statute is plain: it is to secure the equal distribution of the property of insolvents among all their creditors. To this end it prohibits the giving of preferences and requires security for an accounting and frequent reports from the assignee. If preferences are fraudulently attempted the intervention of equity to prevent it is authorized, and if the assignee shall fail in any particular in the discharge of his duty, equity may displace him with a receiver who shall discharge the trust impartially. If the statute fails to accomplish this intent, but on the contrary gives new opportunities for unequal distribution, the legislation has manifestly failed in its purpose.

No facts could illustrate this more clearly than those which are set forth in this bill of complaint. The moment the ten days expired which are allowed to the assignee for giving bond, several of the creditors appeared on the stage with their attachments and seized upon the assigned property. They thereby acquired, as they claim, a lien upon the property which takes precedence of all other claims. What they have done in this case may be done in every case in which an assignee shall fail to give bond, and ordinary prudence will require of every creditor, as soon as he shall learn that an assignment has been made, that he sue out his attachment, and have an officer ready to serve it the very minute the time for filing bond shall expire. Even if he shall have assurances from the assignee that a bond will be filed, he cannot rely upon it with safety, for any accidental circumstance that should prevent it would let others in ahead of him, and by collusion, while keeping a part of the creditors satisfied that he would give bond, the assignee might give the others the very preference the statute intends to preclude. This would be an extraordinary result of legislation designed to secure uniformity and equality; putting it, as it would, in the power of the assignee to defeat the trust and to distribute the property unequally in every instance.

46 MICH.—6

Other anomalous results might also be indicated if it were important.

There is undoubtedly some difficulty in harmonizing all the provisions of this statute. The statute declares the assignment "void" if the bond is not filed; but this word is frequently used in the sense of voidable, (*Beecher v. Marquette & Pacific Rolling Mills Co.* 45 Mich. 103); and it must have that construction here if it shall be necessary to give other provisions of the statute effect. The assignment as an effective trust in the hands of the assignee undoubtedly becomes inoperative and will remain so, and in a certain sense void, unless creditors take steps to save the trust and have it enforced in equity. This in our opinion is what the statute means; and this construction puts a meaning in all its terms. But it is said that the statute in forbidding attachment and execution levies upon the assigned property within the ten days, by implication recognizes the right to make such levies afterwards if bond is not given. This may be; and such levies may perhaps be perfectly valid if creditors fail to invoke the intervention of equity; it is only when the execution of the trust under the last section of the statute is called for that they are displaced.

In disposing of this case we intimate no opinion what might have been the result, if it had appeared that the assignee named in the instrument had never assumed the trust or done any act in furtherance of it. In this case there had been distinct acts of acceptance; possession taken and notice given; everything done, in fact, which could be done before the giving of the bond. Nor does any question arise here as to the effect of the suit in equity upon rights which may have become vested before it was instituted; as rights acquired by attachment are inchoate until judgment and execution levy. Nor is there any question here of the effect of laches in filing the bill; for in this case the bill was filed without any unnecessary delay.

It is a significant fact bearing upon the general intent of the statute to secure as far as possible the equal distribution of the property under all circumstances, that the third section

enlarges very considerably the effect of the assignment, in making it pass to the assignee or to the receiver the right to question the previous conveyances of the assignor to the same extent that the creditors themselves might question them.

The decree appealed from must be reversed, with costs, and the cause remanded with directions for the entry of an order overruling the demurrer, and for further proceedings in accordance with this opinion.

The other Justices concurred.